```
          UNITED STATES DISTRICT COURT
              DISTRICT OF MINNESOTA
     Master File No. 15-cv-4356-DSD-LIB
     Member File No. 15-cv-4261-DSD-LIB
     Member File No. 15-cv-4321-DSD-LIB
     Member File No. 15-cv-4338-DSD-LIB
```

Matthew Ridler and
Lori Ridler, *et al.*,

      Plaintiffs,

v.                                                      **ORDER**

Hutchinson Technology
Incorporated, Richard J. Penn,
Wayne M. Fortun, Martha
Goldberg Aronson, Russell
Huffer, Frank P. Russomanno,
Philip E. Soran, Thomas R.
VerHage, and Merrill Lynch,
Pierce, Fenner & Smith
Incorporated,

      Defendants.

    James W. Anderson, Esq. and Heins Mills & Olson, PLC, 310 Clifton Avenue, Minneapolis, MN 55403 and James M. Wilson, Jr., Esq. and Faruqi and Faruqi, LLP, 685 Third Avenue, Suite 26 Floor, New York, NY 10017, counsel for plaintiffs.

    Jeffrey P. Justman, Esq. and Wendy J. Wildung, Esq. and Faegre Baker Daniels LLP, 90 South 7th Street, Suite 2200, Minneapolis, MN 55402, counsel for HTI defendants.

    Alan S. Goudiss, Esq. and Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022, and Andre T. Hanson, Esq. and Fulbright & Jaworski LLP, 60 South 6th Street, Suite 3100, Minneapolis, MN 55402, counsel for defendant Merrill Lynch.

    This matter is before the court upon the motions to dismiss by defendants Hutchinson Technology Incorporated, the individually named defendants, and Merrill Lynch. Based on a review of the

file, record, and proceedings herein, and for the following reasons, the court grants the motions.

**BACKGROUND**

This securities dispute arises out of the merger of Hutchinson Technology Incorporated (HTI) with an entity owned by TDK Corporation (TDK). HTI is a Minnesota corporation that researches, designs, manufactures, and supplies suspension assemblies for hard disk drives. Defendant Richard J. Penn is HTI's president and CEO and sits on the board of directors. Defendants Wayne M. Fortun, Martha Goldberg Aronson, Russell Huffer, Frank P. Russomanno, Philip E. Soran, and Thomas R. VerHage are independent outside directors. Defendant Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch) served as financial advisor to HTI in connection with the merger.[1]

On February 23, 2015, Albert Ong - the president and CEO of Magnecomp Precision Technology (MPT), a subsidiary of TDK - met with Penn and David Radloff, HTI's vice president and CFO. Proxy

---

[1] Headway Technologies, Inc. and Hydra Merger Sub, Inc. were defendants in Hendricks v. Penn, No. 15-cv-4338, which was consolidated with the instant action. See No. 15-cv-4356, ECF No. 30. The consolidated complaint supersedes the complaint filed in Hendricks. See No. 15-cv-4338, ECF No. 21. Because the consolidated complaint does not raise any claims against Headway Technologies, Inc. or Hydra Merger Sub, Inc., all claims against them have been effectively withdrawn.

at 34, ECF No. 53.[2]  Ong proposed that MPT acquire HTI's assembly operations for a cash purchase price of $120-130 million plus a potential long-term supply arrangement between the two companies. Id.  Penn and Radloff considered the proposal but several days later informed Ong that HTI was not interested in the transaction. Id.

In April 2015, MPT's financial advisor informed Penn that MPT intended to submit an offer to acquire HTI.  Id. at 35.  From April to November 2015, MPT and HTI's board negotiated the possible acquisition, resulting in a merger agreement in which HTI shareholders received $3.62 per share plus additional cash consideration up to a maximum amount of $0.38 per share, up from an initial offer of approximately $2.81 per share.  Id. at 35-40.

On November 1, Merrill Lynch provided HTI's board with a written opinion that the merger was fair "from a financial point of view."  Id. at 42.  On the same day, a special committee of disinterested directors and the board approved the merger agreement.  Id. at 41-42.

---

[2] The court does not consider matters outside the pleadings under rule 12(b)(6).  See Fed. R. Civ. P. 12(d).  The court, however, may consider matters of public record and materials that are "necessarily embraced by the pleadings."  See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citations and internal quotation marks omitted).  In this case, because the plaintiff's complaint is based on the proxy statement, the court properly considers it.

On December 15, HTI filed a nearly 200-page proxy statement with the Securities and Exchange Commission (SEC).[3]  Compl. ¶ 3, ECF No. 36.  Among other information, the proxy contained a summary of Merrill Lynch's fairness opinion.  See Proxy at 45-46.  Specifically, the proxy provided a summary of Merrill Lynch's: (1) Selected Publicly Traded Companies Analysis; (2) Selected Precedent Transactions Analysis; (3) Discounted Cash Flow Analysis; (4) Present Value of Analyst Price Target Analysis; and (5) Selected Precedent Technology Transactions Premiums Analysis.  Compl. ¶ 7; Proxy at 47-49.

On May 23, 2016, lead plaintiffs Matthew and Lori Ridler filed an amended consolidated class action complaint alleging that defendants violated §§ 14(a) and 20 (a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9 by omitting material information from the summary of the fairness opinion.  Defendants now move to dismiss the complaint.

**ANALYSIS**

**I.   Standard of Review**

In order to survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter,

---

[3] HTI filed a preliminary proxy statement on November 23, 2015, which formed the basis of four different complaints against defendants.  On April 20, 2016, the court consolidated the complaints into a single class action.  See ECF No. 30.  The instant complaint is based on the December 15, 2016, proxy.

accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citations and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right of relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted).

Because plaintiffs' claims arise under the federal securities laws, they also must meet the pleading requirements of the Private Securities Litigation Reform Act (PSLRA). Namely, "the complaint shall specify each statement to have been misleading [and] the reason or reasons why the statement is misleading ...." 15 U.S.C. § 78u-4(b)(1).

**II. Section 14(a) of the Exchange Act and SEC Rule 14a-9**

Section 14(a) of the Exchange Act prohibits the solicitation of proxies in violation of the rules and regulations prescribed by the SEC. 15 U.S.C. § 78n(a)(1). Rule 14a-9 prohibits proxy solicitations containing statements that are "false and misleading

with respect to any material fact" or omit "any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a). To successfully plead a claim arising under Section 14(a) and Rule 14a-9, plaintiffs must adequately allege that (1) the proxy contains a false or misleading statement or omission (2) concerning a material fact (3) that the defendant made with the requisite state of mind and (4) that caused the plaintiffs' loss. See 15 U.S.C. § 78u-4(b)(1)-(4); Halpern v. Armonstrong, 491 F. Supp. 365, 378 (S.D.N.Y. 1980).

Plaintiffs allege that the proxy was materially misleading because it omitted the range, mean, and median of the revenue and Earnings Before Interest, Taxes, Deprecation and Amortization (EBITDA) multiples calculated for the eight companies listed in the Selected Company Transactions Analysis (comparable companies analysis) as well as the revenue multiples calculated for the eleven transactions listed in the Selected Precedent Transactions Analysis (comparable transactions analysis). Defendants argue that the complaint should be dismissed because the omissions are neither material nor misleading.

**A. Materiality**

"An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976). The court must consider whether

6

"under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder" and whether the omitted fact would have "altered the total mix of information made available." Id. (internal quotation marks omitted). Generally, "the issue of materiality may be characterized as a mixed question of law and fact," but the question of materiality is appropriately resolved as a matter of law where "reasonable minds cannot differ." Id. at 450; see also In re K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 897 (8th Cir. 2002).

Plaintiffs claim that the omitted information is material because it reveals that: (1) Merrill Lynch manipulated its financial analyses; (2) the share price ranges do not accurately reflect the value of HTI's shares; and (3) the merger consideration was inadequate. Plaintiffs contend that this theory is substantively different than the theory the court previously rejected, namely, that information allowing shareholders to make an independent evaluation is material. See Erickson v. Hutchison Tech. Inc., 158 F. Supp. 3d 751, 758-60 (D. Minn. Jan. 26, 2016). The court, however, sees no substantive difference. Regardless of whether plaintiffs' claimed entitlement to information is based on the ability of shareholders to independently value their shares or the revelation of alleged inadequate merger consideration and financial advisor manipulation, the standard is the same: the proxy

7

statement need only provide a "fair summary of a financial advisor's work." Calleros v. FSI Int'l, Inc., 892 F. Supp. 2d 1163, 1175 (D. Minn. 2012) (citing La. Mun. Police Emps.' Ret. Sys. v. Cont'l Res., Inc., 886 F. Supp. 2d 1255, 1264 (W.D. Okla. 2012)). A fair summary does not require "the detail needed for shareholders to independently examine the financial advisor's work." Himmel v. Bucyrus Int'l Inc., No. 10-C-1104, 2014 WL 1406279, at *20 (E.D. Wis. Apr. 11, 2014).

Plaintiffs contend that the proxy statement did not provide a fair summary because the omitted information would have exposed "banker manipulation," "inadequate consideration," and called into question the legitimacy of the valuation analysis. Pls.' Opp'n Mem. at 10, 14. Although courts have held that information challenging the adequacy of consideration or the legitimacy of the valuation can be material, the cases that plaintiffs rely on are distinguishable. For example, in Smith the court found that the omitted information was necessary "to observe the flaws" in the financial advisor's analysis. Smith v. Robbins & Myers, Inc., 969 F. Supp. 2d 850, 873 (S.D. Ohio 2013). Plaintiffs argue that the proxy should have disclosed the omitted multiples because it would have informed the investor of the flaws in the fairness opinion, specifically, that Merrill Lynch did not apply a higher multiple to HTI's financials. But as discussed below, this is not a flaw - it is only a disagreement over the subjective methodology in valuing

a company. See In re 3Com S'holder Litig., No. CIV. A. 5067-CC, 2009 WL 5173804, at *6 (Del. Ch. Dec. 18, 2009) ("Valuing a company as a going concern is a subjective and uncertain enterprise. There are limitless opportunities for disagreement on the appropriate valuation methodologies to employ ...."). Indeed, the proxy made no representations that its analysis was entirely objective, but rather, stated that it was based on "complex considerations and judgments" and was not "entirely mathematical." Proxy at 46.

The other cases that plaintiffs rely on also involved objective errors in the financial advisor's analysis. See In re Hot Topic, Inc. Sec. Litig., No. 13-02939, 2014 WL 7499375, at *6 (C.D. Cal. May 2, 2014) (alleging "objectively false" financial projections); City of St. Clair Shores Gen. Emps. Ret. Sys. v. Inland W. Retail Estate Tr., Inc., 635 F. Supp. 2d 783, 794 (N.D. Ill. 2009) (alleging fairness opinion was based on "inflated financials" and "relied on faulty information"); In re Trump Hotels S'holder Derivative Litig., No. 96 Civ. 7820, 2000 WL 1371317, at *14 (S.D.N.Y. Sept. 21, 2000) (alleging the fairness opinion relied on a casino expansion that never occurred). In contrast, plaintiffs fail to point to an assumption or fact relied on by the fairness opinion that is objectively false.[4]

---

[4] Additionally, the court is unpersuaded by plaintiffs' reliance on Hayes. In Hayes, the Fourth Circuit, without deciding the issue, simply remanded the case to the district court for consideration of whether the omitted information was material. Hayes v. Crown Cent. Petroleum Corp., 78 F. App'x 857, 864 (2003).

Plaintiffs' argument that the omitted information is material because other proxy statements have included the information is also unpersuasive. The fact that other proxy statements included the omitted information establishes nothing about the materiality of that information because "[t]here is no mechanical checklist of the sorts of things that must be disclosed relating to an investment bank fairness opinion." Calleros, 892 F. Supp. 2d at 1175. Indeed, the type of information included in a proxy statement will vary based on the individual circumstances; the fact that one proxy includes what another proxy omitted does not establish materiality. See In re 3 Com, 2009 WL 5173804, at *7 ("There is no rule that requires a financial advisor to follow the same protocol every time it renders a fairness opinion.").

The court believes that the proxy statement provided a fair and accurate summary of the financial advisor's work. It listed the companies and transactions that Merrill Lynch used in its analysis, provided the EBITDA and revenue multiples that Merrill Lynch actually used in calculating HTI's value, summarized the steps that Merrill Lynch took in rendering its opinion, and disclosed the limitations of the opinion. See Goldfinger v. Journal Commc'ns Inc., No. 15-C-12, 2015 WL 2189752, at *5 (E.D. Wis. May 8, 2015) (dismissing Section 14(a) claim where the proxy statement provided "extensive financial disclosures"); Dent v. Ramtron Int'l Corp., No. 7950-VCP, 2014 WL 2931180, at *12 (Del.

Ch. June 30, 2014) (finding proxy disclosure adequate where the publicly traded companies used in the analysis were disclosed); In re 3Com, 2009 WL 5173804, at *6 (finding that the proxy accurately described the sources of information, the significant assumptions, and the limitations of the fairness opinion). Moreover, given the detail provided in the nearly 200-page proxy and the fifteen independent reasons given by the board in recommending the merger, the omitted information does not alter the total mix of information made available to a reasonable shareholder.

**B.   False and Misleading Statements**

Even assuming that the omitted information was material, its omission did not make a statement in the proxy false or misleading. See Gottlieb v. Willis, No. 12-cv-6637, 2012 WL 5439274, at *3 (D. Minn. Nov. 7, 2012) (emphasis in original) ("[T]he element of materiality is distinct from the element of a false or misleading statement."). Absent an express duty to disclose, an omission in a proxy statement is actionable only if it "makes other statements in the proxy statement materially false or misleading." Resnik v. Swartz, 303 F.3d 147, 151 (2d Cir. 2002); see also Gottlieb, 2012 WL 5439274, at *3. Plaintiffs provide no statute, regulation, or case that requires the disclosure of the revenue and EBITDA multiples calculated for comparable companies or transactions. Therefore, plaintiffs must point to some statement rendered materially false or misleading by the omission.

When considering whether a statement is false of misleading, the "central issue is not whether the particular statements, taken separately, were literally true, but whether defendants' representations, taken together and in context, would have misled a reasonable investor ...." Furlong Fund LLC v. VBI Vaccines, Inc., No. 14-CV-9735, 2016 WL 1181710, at *3 (S.D.N.Y. Mar. 25, 2016) (quoting Okley v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 5 (2d Cir. 1996) (internal quotation marks omitted); see also In re K-tel, 300 F.3d at 891 ("[A case should be dismissed when] no reasonable investor could conclude public statements, taken together and in context, were misleading ....").

Plaintiffs allege that three statements were rendered misleading by the omission. Plaintiffs first argue that the proxy's share price ranges do not accurately reflect the value of HTI. Although some courts have found that a faulty valuation analysis resulted in misleading share prices, plaintiffs point to no similar error here. As stated above, the flaw that plaintiffs point to is simply a "quibble" with the valuation methodology chosen by Merrill Lynch. See In re 3Com, 2009 WL 5173804, at *6 ("[Q]uibbles with a financial advisor's work simply cannot be the basis of a disclosure claim.") Although Merrill Lynch could have conceivably applied higher multiples to HTI's financials resulting in a higher share price range, Merrill Lynch chose a lower multiple range based on its experience and judgment. As discussed above,

because the valuation of a company is an inherently subjective exercise, plaintiffs must point to something more than mere disagreement in order to render the share price ranges misleading.

Further, the proxy states that the fairness opinion was not an appraisal and that the ranges should not be considered Merrill Lynch's views as to the actual values of HTI. Proxy at 49-50. This qualifying language specifically addresses plaintiffs' claim that shareholders would be duped into believing that this was the actual value of HTI; therefore, plaintiffs' claim that this is insufficient boilerplate cautionary language is unpersuasive. See Parnes v. Gateway 2000, Inc., 122 F.3d 539, 548 (8th Cir. 1997) (citations and internal quotation marks omitted) ("The cautionary language must relate directly to that by which plaintiffs claim to have been misled."). Accordingly, the court finds that a reasonable shareholder, when viewing the share price ranges fairly and in context, would not have been misled about the value of HTI.

Plaintiffs next argue that the statement that the multiples applied to HTI's financials were "derived from" the comparable companies and transactions analyses misled shareholders because the multiples applied to HTI were lower than those calculated for the comparable companies and transactions. It is far from certain whether and to what extent the multiples applied to the HTI financials were lower than those calculated in the analyses, especially given that plaintiffs' proposed multiples are based on

13

data that may be different than that used by Merrill Lynch.[5]  See Compl. ¶ 13 n.2.  Assuming, though, that the multiples were in fact lower, the court does not believe a reasonable shareholder would have been misled.  The proxy informs shareholders that the multiples calculated in the comparable companies and transactions analyses were not the actual multiples applied to HTI's financials.  The proxy stated that no company used in the comparable transactions or companies analyses was "identical or directly comparable to" HTI and that the evaluation of HTI was "not entirely mathematical" and was based on "complex considerations and judgments concerning differences in financial and operating characteristics" between HTI and the compared companies.  Proxy at 48.  Again, these statements are not boilerplate; they relate directly to the claim that shareholders were deceived about the multiples that were applied to HTI's financials.  Given these statements, no reasonable shareholder would have thought that the multiples applied to HTI were identical to the comparable companies and transactions multiples.  See In re 3 Com, 2009 WL 5173804, at *3-4 (finding that a proxy was not misleading where the proxy disclosed how the financial advisor used the financials).

---

[5] Further, plaintiffs only provide their own multiples for the comparable companies analysis and simply assert, without any support, that the multiples for the transactions analysis must have been similarly "manipulated."  See  Pls.' Opp'n Mem. at 1, n.2.

Finally, plaintiffs argue that the proxy's opinion that the merger was fair to shareholders is false or misleading. When considering whether an opinion is actionable, a court must take into account that "the reasonable investor understands a statement of opinion in its full context" and that "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts." Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 135 S. Ct. 1318, 1329-30 (2015). Further, "statements of opinion or belief are actionable only if they are both objective and subjectively false." In re JPMorgan Chase & Co. Sec. Litig., MDL NO. 1783, 2007 WL 4531794, at *10 (N.D. Ill. Dec. 18, 2007) (citing Va. Bankshares v. Sandberg, 501 U.S. 1083, 1095 (1991)).

Here, plaintiffs fail to sufficiently allege either subjective or objective falsity. As already discussed, plaintiffs point to no objective flaw in Merrill Lynch's analysis, but only to a disagreement over subjective valuation methodology. Plaintiffs have also failed to sufficiently plead that Merrill Lynch rendered the opinion in bad faith. See id. ("A fairness opinion ... is subjectively false if the speaker does not, in fact, believe the subject matter of the opinion to be fair."). Plaintiffs argue that Merrill Lynch and the individual defendants knew the merger was unfair because they knew that the multiples calculated from the comparable companies and transactions were higher than the

15

multiples actually applied to HTI's financials.  But, again, the application of lower multiples is simply a reflection of Merrill Lynch's judgment; it does not remotely imply that the judgment was rendered in bad faith.  Accordingly, the claim must be dismissed.

Because the court finds that the omissions are neither material nor misleading, it need not address whether plaintiffs sufficiently pleaded scienter or loss causation.[6]

**III. Section 20(a)**

Section 20(a) of the Exchange Act imposes liability on "every person who, directly or indirectly, controls any person" who violates the Exchange Act.  15 U.S.C. § 78t(a).  Plaintiffs' section 20(a) claim relies on a violation of section 14(a), but because they did not adequately plead a 14(a) violation, this claim must be dismissed.  See Little Gem Scis. LLC v. Orphan Med., Inc., No. 06-1377, 2007 WL 541677, at *8 (D. Minn. Feb. 16, 2007) (dismissing section 20(a) claim where there plaintiffs did not adequately plead section 14(a) claim).

---

[6] Indeed, insofar as plaintiffs' complaint must adequately plead negligence, a finding of immateriality weighs against such a showing.  See Brown v. Brewer, No. CV 06-3731-GHK SHX, 2010 WL 2472182, at *24 (C.D. Cal. June 17, 2010) (citation and internal quotation marks omitted) ("As a matter of law, the preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact is sufficient to satisfy the ... negligence standard.").

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Defendants' motions to dismiss [ECF Nos. 47, 58] are granted; and

2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 25, 2016

                                            <ins>s/David S. Doty</ins>
                                            David S. Doty, Judge
                                            United States District Court